IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

---------------------------------------------------------x

GUISEPPE SEDITA,
6 Carman Road
Dix Hills, New York,

          Plaintiff,           No. 24-cv-900

-against-

UNITED STATES OF AMERICA

MERRICK GARLAND in his official
capacity as the Attorney General of the
United States, 950 Pennsylvania Avenue,
N.W., Washington, D.C. 20530,

and

CHRISTOPHER WRAY in his official capacity
as Director of the Federal Bureau of
Investigation,
J. Edgar Hoover Building
935 Pennsylvania Ave, N.W.,
Washington, D.C. 20535-0001

          Defendants.

---------------------------------------------------------x

**COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF**

Now comes Plaintiff, Giuseppe Sedita, by and through undersigned counsel, and complains of Defendants as follows:

**INTRODUCTION AND SUMMARY OF ACTION**

1. This complaint seeks, *inter alia,* declaratory and injunctive relief as a result of Defendants' violation of Plaintiff's Second Amendment rights by i) barring his ability to purchase firearms; and ii) falsely identifying him in the federal firearms database as a person prohibited from the lawful possession of firearms.

1

2. Plaintiff challenges Defendants' denial of his Second Amendment right to purchase a firearm and his classification in the National Instant Criminal Background Check System database as an individual prohibited from legally possessing firearms under 18 U.S.C. § 922.

3. Plaintiff is therefore entitled to (i) the removal of all records in Defendants' database(s) reflecting that Plaintiff is a person prohibited from purchasing, receiving, or possessing a firearm; (ii) the transfer of firearms to Plaintiff's possession; (iii) a declaration that Defendants' conduct violates applicable statutory law and the Second Amendment; (iv) an injunction against Defendants' conduct which violates applicable statutory law and the Second Amendment; and (v) an award of costs and reasonable statutory attorney's fees pursuant to 18 U.S.C. § 925A and 42 U.S.C. § 1988, (vi) and all such further and different relief he is entitled to.

## JURISDICTION AND VENUE

6. This Court has jurisdiction of this matter pursuant to 28 U.S.C. §§1331, 1343, 1346, 2201, 2202; 18 U.S.C. § 925A; and 42 U.S.C. § 1983 and § 1988, as the United States and the Federal Bureau of Investigation are Defendants and the case arises under the Constitution and laws of the United States.

7. Venue is proper under 28 U.S.C. § 1391(e)(1)(A).

## THE PARTIES

8. Guiseppe Sedita ("Plaintiff") is a natural person and citizen of New York State, residing in the Town of Huntington, County of Suffolk, State of New York.

9. Plaintiff has no prohibitors to firearm possession under state or federal law.

10. Plaintiff has been erroneously denied the purchase of a firearm and is falsely identified in the National Instant Criminal Background Check System ("NICS") database as a "prohibited person" under 18 USC 922(g), as set forth in detail below.

11. Defendant United States of America ("USA") is a jural entity and a proper defendant under 18 USC § 925A.

12. Defendant Merrick Garland is sued in his official capacity as the Attorney General of the United States of America. As the Attorney General, Defendant Garland is responsible for administering and executing the laws, customs, practices, and policies of the United States, and is currently enforcing the laws, customs, practices and policies complained of in this action.

13. Defendant Christopher Wray is sued in his official capacity as the Director of the Federal Bureau of Investigation ("FBI"). As Director of the FBI, Defendant Wray is responsible for administering and executing the laws, customs, practices, and policies of the FBI, and is currently enforcing the laws, customs, practices and policies complained of in this action. Defendant Wray controls and directs the FBI, the agency that oversees and implements the National Instant Criminal Background Check System Case and the Criminal Justice Information Services Division ("CJIS") of the FBI. The CJIS Division maintains and implements the NICS database and communications system.

## LEGAL FRAMEWORK

a. **Applicable Law**

14. The Gun Control Act of 1968 prohibits certain categories of persons from shipping, transporting, possessing or receiving firearms or ammunition in or affecting interstate commerce. See, 18 U.S.C. § 922(g).

15. 18 U.S.C. § 922(g) identifies events and conditions that, *inter alia*, render an individual prohibited from possessing, transferring, and/or receiving firearms. See also, 27 C.F.R. 478.32(a)(1).

16. To prevent prohibited persons from purchasing firearms, the Brady Handgun Violence Prevention Act of 1993 directed the Attorney General to establish a background check procedure that licensed firearms dealers would be required to consult in order to determine whether the "transfer" of a firearm to a potential buyer would violate federal or state law. See, 18 U.S.C. § 922(t)(1).

17. The Attorney General thereafter established NICS, managed by the FBI Criminal Justice Information Services Division's NICS Section. See, 28 C.F.R. § 25.3.

18. NICS provides full service to the federal firearms licensees ("FFLs") in 30 states, five U.S. territories, and the District of Columbia. NICS provides partial service to seven states. The remaining 13 states perform their own checks through NICS. The NICS background check verifies that the buyer is not ineligible to purchase or own a firearm. See, https://www.fbi.gov/services/cjis/nics

19. In New York State, all retail purchases of firearms must be conducted through an FFL, unless the transaction is between "immediate family". See, N.Y. Gen. Bus. Law Art. 39-DD § 897; 39-DDD § 898. As such, in New York State, every retail transfer (purchase) of a firearm requires a NICS background check.

20. FFLs are required to perform a background check via NICS prior to the sale or transfer of a firearm.

21. FFLs are prohibited from selling a firearm to an individual who fails a NICS background check.

22. It is illegal under federal law for a person to sell a firearm to a "prohibited person", to wit, a person prohibited from lawfully possessing a firearm. See, 18 U.S.C. § 921, § 922.

23. Where a purchaser is deemed prohibited by the FBI/NICS system from purchasing a firearm, it is impossible for that individual to lawfully purchase a firearm in the State of New York, even where the information in the NICS system incorrect and/or inconclusive.

**b. Burden on NICS to Prove Disqualification from Firearms Possession**

24. Under 28 C.F.R. § 25.10, the FBI has an obligation to verify the records in its system with the originating agency and take all necessary steps to correct the record in NICS. This is not a discretionary duty.

25. Under 28 C.F.R. § 25.5, "Validation and data integrity of records in the system":

"(a) The FBI will be responsible for maintaining data integrity during all NICS operations that are managed and carried out by the FBI. This responsibility includes:

(1) Ensuring the accurate adding, canceling, or modifying of NICS Index records supplied by Federal agencies;

(2) Automatically rejecting any attempted entry of records into the NICS Index that contain detectable invalid data elements;

(3) Automatic purging of records in the NICS Index after they are on file for a prescribed period of time; and

(4) Quality control checks in the form of periodic internal audits by FBI personnel to verify that the information provided to the NICS Index remains valid and correct.

(b) Each data source will be responsible for ensuring the accuracy and validity of the data it provides to the NICS Index and will immediately correct any record determined to be invalid or incorrect." See, 28 CFR 25.5.

26. As detailed below, the FBI has failed to adhere to their non-discretionary statutory obligations under 28 C.F.R. § 25.5.

5

27. Under 28 C.F.R. § 25.6, upon inquiry from an FFL during a purchase transaction, NICS is required to issue a "proceed" response if no disqualifying information is found in the NICS Index, NCIC, or III; a "delayed" response, if the NICS search finds a record that requires more research to determine whether the prospective transferee is disqualified from possessing a firearm by Federal or state law; or a "denied" response, when at least one matching record is found in either the NICS Index, NCIC, or III that provides information demonstrating that receipt of a firearm by the prospective transferee would violate 18 U.S.C. 922 or state law

28. Under C.F.R. § 25.2, a "denied" transaction means the "denial of a firearm transfer based on a NICS response indicating one or more matching records were found providing information demonstrating that receipt of a firearm by a prospective transferee would violate 18 U.S.C. 922 or state law."

29. Under C.F.R. § 25.9, "Retention and destruction of records in the system", "NICS will retain NICS Index records that indicate that receipt of a firearm by the individuals to whom the records pertain would violate Federal or state law. The NICS will retain such records indefinitely, unless they are canceled by the originating agency."

30. Under C.F.R. §25.10, "Correction of erroneous system information", the FBI is required to "investigate the matter…[and request that] the data source to verify that the record in question pertains to the individual who was denied, or to verify or correct the challenged record. The FBI will consider the information it receives from the individual and the response it receives from the POC or the data source. If the record is corrected as a result of the challenge, the FBI shall so notify the individual, correct the erroneous information in the NICS, and give notice of the error to any Federal department or agency or any state that was the source of such erroneous records."

31. The FBI is improperly shifting its burden to the individual to follow up with various courts or jurisdictions. This is the same scenario found in *Ross v. Fed. Bureau of Alcohol, Tobacco, Firearms & Explosives*, 903 F. Supp. 2d 333, 341 (D. Md. 2012).

32. In *Ross*, the district court found that the defendant improperly shifted the burden to the plaintiff to contact the state that supplied alleged prohibiting information to NICS and provide "appropriate documentation and/or update his record." *Id.* at 341. "Nothing in the regulations supports the NICS Section's position that the prospective transferee must disprove the existence of a potentially disqualifying criminal record to avoid all future delays." *Id.* "[t]he regulations make clear that the burden falls on the NICS Section to conduct additional research "to determine whether the prospective transferee is disqualified from possessing a firearm by Federal or state law." 28 C.F.R. § 25.6(c)(1).

33. If the FBI does not have confirmed information that an individual is, in fact, a prohibited person they must approve the purchase. Placing the burden on the individual to prove s/he is not a prohibited person violates the Second Amendment and is contrary to 28 C.F.R. § 25.

34. The FBI's denial of firearms transactions based on anything other than a confirmed *de facto* state or federal prohibitor violates the Second Amendment.

35. Denying a firearm transaction based on incomplete or non-disqualifying information leaves Plaintiff and similarly situated individuals without any remedy prior to the termination of a constitutional right, which violates the right to due process.

36. This has been an ongoing issue with Defendants and they have been on notice as early as May 8, 2016 when the case *Gregory Michael Ledet v. USA*, in the United States District Court for the District of Columbia, Civil Action No. 1:16- cv-00865-ABJ was filed. Since that case, at least six others were filed: *Daniel Umbert, et al. v USA*, in the United States District Court

for the District of Columbia, Civil Action No. 1:18-cv-01336-TSC; *Robert Boyd Rood v. USA*, in the United States District Court for the District of Columbia, Civil Action No. 1:17-cv-00839-KBJ; *Robert Earl Rowe v. USA*, in the United States District Court for the District of Columbia, Civil Action No. 1:16-cv-01510- APM; *Charles Norfleet Hughes v. USA*, in the United States District Court for the District of Columbia, Civil Action No. 1:16-cv-01425-APM; and *James Pollard v. Garland*, in the United States District Court for the District of Columbia, Civil Action No. 1:21-cv-00648-PLF.

37. After the filing of the aforementioned cases, the government defendant(s) "voluntarily" provided the relief sought in the actions. In *Umbert*, the government corrected its information to allow three of the plaintiffs to purchase firearms; in the remaining cases, all five plaintiffs were granted certificates to purchase their firearms. The government's post-filing conduct mooted those cases, yet the issues underlying the present action continue to evade review and repeat in Defendants' practices.

38. The protocols and practices of the NICS system leaves the civil rights of Plaintiff and all others similarly situated violated and without a remedy for resolution short of spending money to retain an attorney to seek redress in the courts.

***December 2021 NICS Denial***

39. Prior to December 2021, Plaintiff attempted on two separate occasions to purchase firearms from a Federal Firearms Licensee (FFL) at a local gun store in Suffolk County, New York.

40. Plaintiff completed the necessary federal form, Form 4473, as required by the Bureau of Alcohol, Tobacco, Firearms, and Explosives (BATFE), and the FFL sent Plaintiff's personal identifying information to be assessed through the NICS system.

41. Plaintiff's purchases were both erroneously denied by NICS.

42. Plaintiff obtained the NICS transaction numbers for the attempted purchases (""NTN") [NTN10266GXTX and 1024R79DH] and, through his attorney, wrote to NICS/the FBI to obtain the grounds for the denial of his firearm purchases.

43. By letter dated February 1, 2022, the FBI CJIS/NICS Section indicated that the transaction numbers were 'too old' and the agency no longer had any information related thereto.

44. For a third time, and to obtain a timely NTN, Plaintiff again attempted to purchase a firearm. Again, he completed the required ATF Form 4473 and, again his transaction was wrongfully denied by NICS.

45. By letter dated April 12, 2022, Plaintiff's attorney sent NICS a letter to request the grounds upon which the transaction [NTN 102F34T8B] was denied.

46. By letter date April 18, 2022, the FBI CJIS informed that Plaintiff's purchase was not "denied" but "delayed."

47. Defendant's information was incorrect, as Plaintiff continues to be erroneously identified in the NICS database as a person disqualified from possessing firearms.

48. In response to the FBI CJIS April 18, 2022 letter, Plaintiff completed a Voluntary Appeal File ("VAF") packet to obtain a UPIN (Unique Personal Identification Number) to prevent any further delays or denials by NICS, which included his inked fingerprints.

49. In and around January 2023, Plaintiff's VAF packet was mailed to NICS along with copies of the April 18, 2022 letter from CJIS and Plaintiff's executed attorney authorization.

50. By letter dated February 23, 2023, the FBI CJIS informed that it no longer had any information related to Plaintiff's denied transaction, but that the "FBI received [Plaintiff's] Voluntary Appeal File (VAF) request" which was "forwarded for further processing.

***April 17, 2023 VAF Denial: False Classification of Plaintiff as a 'Prohibited Person'***

51. By letter dated April 17, 2023, Plaintiff finally learned the reason for the prior erroneous denials by NICS.

52. The April 17, 2023 letter informed that Plaintiff was "not eligible to be entered into the VAF" because he suffered from a federal prohibitor under 18 USC § 922(g).

53. A copy of Plaintiff's FBI Identity History Summary and/or state- maintained criminal history was enclosed for review.

54. The April 17, 2023 letter informed that Plaintiff was listed in the NICS database as a prohibited person under 18 U.S.C. § 922(g)(8) as being "subject to a court order that (A) was issued after a hearing of which such person received actual notice, and at which such person had an opportunity to participate; (B) restrains such person from harassing, stalking, or threatening an intimate partner of such person or child of such intimate partner or person, or engaging in other conduct that would place an intimate partner in reasonable fear of bodily injury to the partner or child; and (C)(i) includes a finding that such person represents a credible threat to the physical safety of such intimate partner or child; or (ii) by its terms explicitly prohibits the use, attempted use, or threatened use of physical force against such intimate partner or child that would reasonably be expected to cause bodily injury.'"

***Plaintiff Was Not Subject to an Order of Protect and Has No Domestic Violence Misdemeanor***

55. Plaintiff was not subject to an order of protection at any time that he attempted to purchase a firearm and was denied by NICS.

56. Plaintiff has never been subject to an order of protection involving an "intimate partner" or the "child of an intimate partner."

57. The April 17, 2023 letter further informed Plaintiff that he was a disqualified person under 18 U.S.C. § 922(g)(9), as having been convicted of a misdemeanor crime of domestic violence.

58. Plaintiff is not a domestic violence misdemeanant, has no convictions related to any of the enumerated covered individuals under the statute, or anyone constituting a "qualifying relationship."

59. While Plaintiff does have a misdemeanor conviction for attempted assault, the complainant of the charge was not anyone that meets falls into the category of a "qualifying relationship" status.

***NICS FBI CJIS Failed to Perform A Statutorily Imposed Ministerial Duty***

60. NICS, FBI and CJIS were required to investigate the underlying information related to Plaintiff's prohibited record in NICS to ensure that Plaintiff's conviction met the standard of a prohibiting conviction.

61. None of the information contained in Plaintiff's FBI and state criminal history reports indicates that his conviction for attempted assault was domestic violence related, identified the complainant, or indicated that the event was categorized as a "qualifying relationship" under 18 U.S.C. § 922(g)(9).

62. NICS, FBI and CJIS failed to perform the ministerial duty of verifying the information in its database to confirm that Plaintiff was properly identified therein.

63. NICS, FBI and CJIS failed to perform the ministerial duty of verifying the information in its database to confirm that Plaintiff was still subject to an order of protection.

64. NICS, FBI and CJIS failed to perform the ministerial duty of verifying the information in its database to confirm that Plaintiff was convicted of a misdemeanor crime involving a "qualifying relationship."

65. Had NICS, FBI and CJIS performed its statutory duty, it would have been revealed that Plaintiff was no longer subject to an order of protection.

66. Had NICS, FBI and CJIS performed its statutory duty, it would have been revealed that Plaintiff's conviction was not a disqualifying event under federal or state law, that his conviction did not involve a "qualifying relationship" and that he did not belong in the NICS database.

67. The April 17, 2023 letter informed Plaintiff that, to 'challenge' the finding by the FBI CJIS, he should contact Queens Criminal Court.

68. Under 28 C.F.R. § 25.10, the FBI has an obligation to verify the records in its system with the originating agency and take all necessary steps to correct the record in NICS – not Plaintiff.  This is not a discretionary duty.

69. NICS, FBI and CJIS shirked its statutory obligation to verify the information in the federal databases, obtain the police investigative reports, obtain the records from the Queens Criminal Court, investigate Plaintiff's claims, and "take all steps necessary to correct the record in the NICS system."

70. NICS, FBI and CJIS placed its legal obligation under to 28 C.F.R. § 25.10 directly on Plaintiff's shoulders.

71. Plaintiff proceeded to do the job that NICS, FBI and CJIS was required to perform under 28 C.F.R. § 25.10 by obtaining the police report and court documents related to the assault conviction.

*NICS FBI CJIS Force Plaintiff to Perform Their Investigation*

72. By letter dated July 12, 2023, Plaintiff's attorney responded to the FBI/CJIS/NICS Section indicating that, *inter alia*:

> "the basis for the [VAF] denial was the (inaccurate) belief that Mr. Sedita's October 12, 2001 conviction for Attempted Assault in the Third Degree and Attempted Criminal Contempt in the Second Degree rendered him a prohibited domestic violence misdemeanant. Apparently, no investigation into the underlying facts of the arrest was conducted prior to NICS' conclusion that these convictions were 'domestic violence' related. Enclosed please find the charging documents related to each of the arrests and convictions, which involved three (3) male defendants and one (1) male complainant. Nothing in the documentation suggests the existence of a domestic relationship, nor was there one. Mr. Sedita has no disqualifiers to the transfer, receipt, possession, or ownership of firearms. Kindly remove him from the NICS database and issue a purchasing certificate for the above-referenced transaction. Mr. Sedita is also requesting a UPIN to avoid future delays and firearm-related barriers."

73. The July 12, 2023 packet sent back to the FBI CJIS also included a copy of the April 17, 2023 FBI CJIS letter (for reference), Plaintiff's FBI criminal history report, the Queens Criminal Court criminal complaints, and Order of Protection.

74. On its face, the Order of Protection indicates that it expires on December 12, 2002.

75. None of the documents supplied in the July 12, 2023 packet to the FBI CJIS supports the conclusion that the events underlying Plaintiff's conviction involve a "qualifying relationship."

76. In fact, the order of protection specifically indicates on its face, "Non Family Offense."

77. As of January 2024, Plaintiff still had not received any response from NICS/FBI, CJIS.

78. By letter dated January 24, 2024, Plaintiff sent another packet to the FBI CJIS with the same information and documentation that had been included in the July 12, 2023 packet reiterating, *inter alia*, that the "charging documents related to each of the arrests and convictions, contained in the enclosed packet, involved three (3) male defendants and one (1) male complainant. Nothing in the documentation even suggests a domestic relationship, nor was there one. Mr. Sedita has wrongfully been denied and prohibited from exercising a fundamental constitutional right since 2021 based on the failure or refusal of an investigator to properly ensure that only prohibited persons are in the NICS system."

***FBI CJIS Persistent Refusal to Remove Plaintiff from the NICS System***

79. By letter dated January 21, 2024, the FBI CJIS ignored the prior communications and the documentation conclusively establishing that Plaintiff should be removed from the NICS database. The generic FBI CJIS letter **suggested that Plaintiff file a VAF appeal** (ignoring the VAF appeal communications detailed above).

80. Defendants have forced Plaintiff to needlessly retain counsel, expend money, and conduct the investigation imposed on NICS/FBI/CJIS by statute, and commence an action in federal court to remove him from a federal reporting database in which he should not have been included in the first instance.

81. NICS/FBI/CJIS are obstructing Plaintiff's right to purchase of firearms based on speculation that he may be a prohibited person, they improperly shifted the burden to Plaintiff to verify the records in its database, refused to remove Plaintiff from the NICS database, refused to process Plaintiff's VAF/UPIN application, refused to approve Plaintiff's VAF/UPIN application, and generally failed to remove the barriers to Plaintiff's free exercise of Second Amendment protected conduct.

82. Because of Defendants' actions and failures to act, Plaintiff is erroneously identified to law enforcement, FFLs, and any other agency with the ability to access and/or obtain information contained in the NICS system as a "prohibited person".

83. Because Plaintiff is identified as a "prohibited person" by the NICS system, even if he were to somehow acquire a firearm, his possession of a firearm would subject him to criminal penalties, including incarceration, because a NICS background check by third party would reveal [albeit falsely] that he is identified as a "prohibited person" whose possession of firearms is unlawful.

84. Plaintiff has none of the prohibiting factors, events, or conditions listed in 28 U.S.C. § 922 that constitute a prohibitor to firearm possession.

85. In addition to the constitutional violations detailed herein, Plaintiff has been monetarily damaged in amounts exceeding $2,500 in costs and attorney's fees, which continue to increase.

## COUNT 1 – SECOND AMENDMENT

86. Plaintiff repeats and realleges the allegations of the preceding paragraphs as if set forth herein.

87. Plaintiff has an individual, pre-existing right to possess firearms under the Second Amendment.

88. Defendants' conduct as detailed herein violates Plaintiff's rights as protected by the Second Amendment and will continue to violate Plaintiff's constitutional rights without the relief sought herein.

## COUNT II – DECLARATORY JUDGEMENT

89. Plaintiff repeats and realleges the allegations of the preceding paragraphs as if set forth herein.

90. The Declaratory Judgment Act provides, "In a case of actual controversy within its jurisdiction, any court of the United States may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought." 28 U.S.C. 2201(a).

91. Absent a declaratory judgment, Plaintiff will continue to suffer irreparable injury in the future.

92. There is an actual controversy between the parties of sufficient immediacy and reality to warrant issuance of a declaratory judgment.

93. This Court possesses an independent basis for jurisdiction over the parties.

94. A declaratory judgment regarding the complained of policies will determine the rights and responsibilities of the parties, clarify and settle the legal issues going forward, and will terminate and afford relief from the uncertainty, insecurity, and controversy giving rise to this proceeding.

95. Defendants' laws, customs, practices, and policies violate the Second Amendment to the United States Constitution, and applicable statutory law, facially and as applied against the Plaintiff in this action, causing him an injury-in-fact.

96. Plaintiff is therefore entitled to a declaration declaring such laws, customs, policies, and practices unconstitutional.

97. Plaintiff is also entitled to a declaration that Plaintiff is not and may not be barred or prohibited from any agency of the United States from obtaining firearms or ammunition by

virtue of his New York state court conviction in October 12, 2001 for attempted assault in the third degree [N.Y. Penal Law § 110/120.00] and attempted criminal contempt in the second degree [N.Y. Penal Law §110/215.50].

### COUNT III – INJUNCTIVE RELIEF

98. Plaintiff repeats and realleges the allegations of the preceding paragraphs as if set forth herein.

99. Plaintiff has an individual, pre-existing right to possess firearms under the Second Amendment.

100. Defendants have the burden, not Plaintiff, of demonstrating the existence of a longstanding, historically accepted basis to impede, delay, interfere with, and/or prevent Plaintiff's possession of firearms.

101. Plaintiff has a Constitutionally protected right to purchase firearms and ammunition; but for Defendants' denial of Plaintiff's purchase, he would be allowed to purchase firearms and ammunition from an FFL.

102. Because Plaintiff has no disqualifiers under state or federal law to the possession and purchase of firearms, Defendants should be (i) immediately enjoined from denying Plaintiff's purchase of firearms based on the aforementioned convictions, (ii) mandated to approve Plaintiff's transaction 102F34T8B; (iii) mandated to process Plaintiff's VAF application packet; and (iv) mandated to issue a UPIN to Plaintiff to avoid future NICS denials and delays.

103. Plaintiff also requests leave to apply to this Court for an award of reasonable statutory attorneys' fees and costs.

WHEREFORE, Plaintiffs respectfully request that the Court:

(1) Order Defendants to correct their records to reflect that Plaintiff is not a person prohibited from purchasing, receiving, or possessing firearms resulting from the aforementioned convictions;

(2) Order Defendants to allow the transfer of firearms to Plaintiff;

(3) Order Defendants to process issue a UPIN to Plaintiff;

(4) Declare that Defendants' conduct violates applicable statutory law and the Second Amendment;

(5) Grant injunctive relief against Defendants' conduct, which violates applicable statutory law and the Second Amendment; and

(6) Grant Plaintiff leave to apply for an award of costs and reasonable statutory attorney's fees; and

(7) grant all other such further and different relief that this Court deems just and equitable.

Dated: March 28, 2024
　　　　Scarsdale, New York

　　　　　　　　　　　　　　　　　Respectfully submitted,

　　　　　　　　　　　　　　　　　/s/ Amy L. Bellantoni
　　　　　　　　　　　　　　　　　Amy L. Bellantoni, Esq.
　　　　　　　　　　　　　　　　　The Bellantoni Law Firm, PLLC
　　　　　　　　　　　　　　　　　2 Overhill Road, Suite 400
　　　　　　　　　　　　　　　　　Scarsdale, New York 100583
　　　　　　　　　　　　　　　　　(914) 367-0090 (t)
　　　　　　　　　　　　　　　　　(888) 763-9761 (f)
　　　　　　　　　　　　　　　　　abell@bellantoni-law.com
　　　　　　　　　　　　　　　　　DC District Bar No. NY0355
　　　　　　　　　　　　　　　　　*Counsel for Plaintiff*