UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| GUISEPPE SEDITA, | |
| Plaintiff, | |
| v. | Civil Action No. 24-0900 (TNM) |
| UNITED STATES OF AMERICA, et al., | |
| Defendants. | |

**DEFENDANTS' MOTION TO DISMISS,
ALTERNATIVELY, FOR SUMMARY JUDGMENT AND
<u>MEMORANDUM IN SUPPORT THEREOF</u>**

## TABLE OF CONTENTS

Table of Contents ................................................................................................................. i

Table of Authorities ............................................................................................................. ii

INTRODUCTION ................................................................................................................. 1

STATUTORY BACKGROUND ........................................................................................... 2

    I.     The National Instant Criminal Background Check System ("NICS")................... 2

    II.    Transfers of Firearms............................................................................................. 3

    III.   Available Routes for Denied or Delayed Responses .............................................. 4

    IV.   Retention and Destruction of Records Regarding NICS Inquiries ......................... 5

FACTUAL BACKGROUND ................................................................................................. 6

LEGAL STANDARDS ......................................................................................................... 8

    I.     Rule 12(b)(1)........................................................................................................... 8

    II.    Rule 12(b)(6)........................................................................................................... 9

    III.   Rule 56 .................................................................................................................. 10

ARGUMENT ....................................................................................................................... 11

    I.     Plaintiff Cannot Bring a Statutory Claim Under 18 U.S.C. § 925A.................... 11

    II.    Plaintiff Fails to State a Second Amendment Claim. ........................................... 14

    III.   Plaintiff Fails to State a Fifth Amendment Due Process Claim............................ 18

    IV.   Plaintiff's Claim for Monetary Damages is Barred by Sovereign Immunity. ...... 21

CONCLUSION..................................................................................................................... 22

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Am. Farm Bureau v. EPA*,
   121 F. Supp. 2d 84 (D.D.C. 2000) ............................................................................ 9

*Am. Mfrs. Mut. Ins. Co. v. Sullivan*,
   526 U.S. 40 (1999) ................................................................................................... 19

*Anderson v. Carter*,
   802 F.3d 4 (D.C. Cir. 2015) ..................................................................................... 11

*Anderson v. Liberty Lobby, Inc.*,
   477 U.S. 242 (1986) ........................................................................................... 10, 11

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009) ............................................................................................. 9, 10

*Bell Atl. Corp. v. Twombly*,
   550 U.S. 544 (2007) ............................................................................................. 9, 10

*Celotex Corp. v. Catrett*,
   477 U.S. 317 (1986) ........................................................................................... 10, 11

*Clark v. Libr. of Cong.*,
   750 F.2d 89 (D.C. Cir. 1984) ................................................................................... 21

*Cnty. of Sacramento v. Lewis*,
   523 U.S. 833 (1998) ................................................................................................. 20

*Czekalski v. Peters*,
   475 F.3d 360 (D.C. Cir. 2007) ................................................................................. 11

*Dickson v. United States*,
   831 F. Supp. 893 (D.D.C. 1993) .............................................................................. 21

\*   *District of Columbia v. Heller*,
   554 U.S. 570 (2008) ................................................................................................. 15

*FAA v. Cooper*,
   566 U.S. 284 (2012) ................................................................................................. 11

*FDIC v. Meyer*,
   510 U.S. 471 (1994) ................................................................................................. 21

*Graham v. Connor*,
    490 U.S. 386 (1989) ........................................................................................ 18

*Greene v. Dalton*,
    164 F.3d 671 (D.C. Cir. 1999) ........................................................................ 11

*Jack's Canoes & Kayaks, LLC v. Nat'l Park Serv.*,
    937 F. Supp. 2d 18 (D.D.C. 2013) ............................................................. 10, 12

*Jefferson v. Harris*,
    285 F. Supp. 3d 173 (D.D.C. 2018) ................................................................ 20

*Jerome Stevens Pharm., Inc. v. FDA*,
    402 F.3d 1249 (D.C. Cir. 2005) ........................................................................ 9

*Lightfoot v. District of Columbia*,
    273 F.R.D. 314 (D.D.C. 2011) ........................................................................ 19

*Marshall v. Reno*,
    915 F. Supp. 426 (D.D.C. 1996) ..................................................................... 21

*Mathews v. Eldridge*,
    424 U.S. 319 (1976) ........................................................................................ 20

*Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*,
    475 U.S. 574 (1986) ........................................................................................ 10

*McCarthy v. United States*,
    850 F.2d 558 (9th Cir. 1988) ............................................................................ 8

\* *McRorey v. Garland*,
    99 F.4th 831 (5th Cir. 2024) ....................................................................... 15, 16

\* *New York State Rifle & Pistol Association, Inc. v. Bruen*,
    597 U.S. 1 (2022) ................................................................................... 2, 14, 15

*Propert v. District of Columbia*,
    948 F.2d 1327 (D.C. Cir. 1991) ...................................................................... 19

*Robinson v. Pilgram*,
    Civ. A. No. 20-2965 (GMH), 2021 WL 5987016 (D.D.C. Dec. 17, 2021) ............................. 21

*Ross v. Fed. Bureau of Alcohol, Tobacco, & Firearms*,
    807 F. Supp. 2d 362 (D. Md. 2011) ............................................................. 12, 16

*Ross v. Fed. Bureau of Alcohol, Tobacco, Firearms, & Explosives*,
    903 F. Supp. 2d 333 (D. Md. 2012) ................................................................ 16

*Sussman v. U.S. Marshals Serv.*,
   494 F.3d 1106 (D.C. Cir. 2007) ............................................................ 13

*Trudeau v. FTC*,
   456 F.3d 178 (D.C. Cir. 2006) .............................................................. 9

*Turaani v. Wray*,
   988 F.3d 313 (6th Cir. 2021) ................................................................ 15

\* *United States v. Carey*,
   602 F.3d 738 (6th Cir. 2010) ................................................................ 19

*United States v. Chem. Found.*,
   272 U.S. 1 (1926) ................................................................................. 13

*United States v. Mitchell*,
   463 U.S. 206 (1983) ............................................................................. 11

*United States v. Nordic Vill. Inc.*,
   503 U.S. 30 (1992) ............................................................................... 12

\* *United States v. Portillo-Munoz*,
   643 F.3d 437 (5th Cir. 2011) ................................................................ 19

*Vico Prods. Co. v. Nat'l Lab. Rels. Bd.*,
   333 F.3d 198 (D.C. Cir. 2003) .............................................................. 8

*Wright v. Foreign Serv. Griev. Bd.*,
   503 F. Supp. 2d 163 (D.D.C. 2007) ..................................................... 9

*Yee v. Jewell*,
   228 F. Supp. 3d 48 (2017) ................................................................... 8

**Statutes**

\* 18 U.S.C. § 922 .................................................................................... passim

\* 18 U.S.C. § 925A .................................................................................. passim

28 U.S.C. § 1346 ..................................................................................... 21

28 U.S.C. § 2679 ..................................................................................... 21

34 U.S.C. § 40901 ................................................................................... 17

**Rules**

Fed. R. Civ. P. 12 ................................................................................. 9, 10

Fed. R. Civ. P. 56 ................................................................................................................ 10

**Regulations**

28 C.F.R. § 20.21 ................................................................................................................ 17

28 C.F.R. § 20.37 ................................................................................................................ 17

28 C.F.R. § 25.1 .................................................................................................................... 3

28 C.F.R. § 25.10 ............................................................................................... 5, 16, 17, 18

28 C.F.R. § 25.2 ............................................................................................................. 3, 4, 6

28 C.F.R. § 25.3 .................................................................................................................... 2

28 C.F.R. § 25.5 ................................................................................................................ 17

28 C.F.R. § 25.6 ............................................................................................................. 3, 4

28 C.F.R. § 25.9 ....................................................................................................... 6, 7, 13, 2

**Other Authorities**

Pub. L. 103(h) ....................................................................................................................... 3

Pub. L. 103-159 ..................................................................................................................... 2

Defendants the United States of America, Merrick Garland, in his official capacity as Attorney General, and Christopher Wray, in his official capacity as Director of the Federal Bureau of Investigation ("FBI"), respectfully move to dismiss Plaintiff Guiseppe Sedita's Complaint in its entirety under Federal Rule of Civil Procedure ("Rule") 12(b)(1) for lack of subject matter jurisdiction and Rule 12(b)(6) for failure to state a claim, or for summary judgment in their favor pursuant to Rule 56.

## INTRODUCTION

Under the Brady Handgun Violence Prevention Act (the "Brady Act"), before a firearms transfer can proceed, the federal firearms licensee must first request a background check through the National Instant Criminal Background Check System ("NICS"), which is managed by the FBI. 18 U.S.C. § 922(t)(1). The licensee may transfer a firearm, among other requirements, if NICS issues a "proceed" response or three business days have passed, and the FBI has not first issued a "denied" response to the transaction or let the transaction "proceed." *Id.*

Plaintiff brings this case after the FBI issued a decision to "delay" his alleged firearms transactions after a licensee initiated statutorily mandated NICS background checks. The FBI issues a "delayed" response when it needs to conduct additional research on the transferee's criminal history or other potentially prohibiting record before issuing a definitive decision. For example, as Plaintiff admits, he has a state conviction for misdemeanor attempted assault, which would prohibit him from owning a firearm if it involves domestic violence. Since the FBI's information indicates it did not "deny" or "proceed" Plaintiff's transaction in Plaintiff's case within three business days of the licensee initiating the NICS background check, the licensee was legally permitted under federal law to transfer Plaintiff a firearm. But should a licensee decline to do so, as apparently happened to Plaintiff, that is at the discretion of the licensee, and FBI has established procedures pursuant to the Brady Act to prevent future extended delayed transactions. As Plaintiff

alleges, he availed himself of the FBI's procedures, and many other procedures are still available to Plaintiff to ensure his future transactions are not delayed. In this light, Plaintiff's claims under 18 U.S.C. § 925A, the Second Amendment, and the Fifth Amendment are subject to dismissal or a summary judgment in Defendants' favor.

First, Plaintiff's claim under 18 U.S.C. § 925A challenging the FBI's decision on his NICS background check is barred. That statutory provision only permits suits against the United States or its officials when the FBI "denies" firearms transactions, and Plaintiff here fails to demonstrate anything other than that his transactions were "delayed." Second, Plaintiff fails to establish a Second Amendment claim. In *New York State Rifle & Pistol Association, Inc. v. Bruen*, 597 U.S. 1 (2022), the Supreme Court held that background-check regulations like those required by the Brady Act are "presumptively constitutional," and Plaintiff fails to allege that FBI violated any statutory or regulatory requirements under the Brady Act in responding to the background check inquiries in this case. Third, Plaintiff fails to allege any procedural or substantive due process violation as this claim fails for the same reasons his Second Amendment claim fails. And finally, Plaintiff cannot seek monetary damages against the United States because of sovereign immunity.

**STATUTORY BACKGROUND**

I.    <u>**The National Instant Criminal Background Check System ("NICS")**</u>

The Brady Handgun Violence Prevention Act, Pub. L. 103-159, 107 Stat. 1536 (1993) (codified in part at 34 U.S.C. § 40901), amended the Gun Control Act and directed the Attorney General to establish a background check procedure to facilitate the review of federal, state, and local criminal history and other information relevant to the eligibility of an individual without a federal firearm licensee to obtain a firearm. 18 U.S.C. § 922(t)(1). The Attorney General met this imperative by establishing the NICS, which is managed by the FBI Criminal Justice Information Services ("CJIS") Division. 28 C.F.R. § 25.3. The Brady Act also empowered the Attorney

General to prescribe regulations under which the NICS would function. *See* Pub. L. 103(h), 107 Stat. 1542 (codified at 34 U.S.C. § 40901(h)).

## II.     **Transfers of Firearms**

The Brady Act requires any licensed importer, manufacturer, or dealer in firearms (i.e., the "licensee") to contact NICS to perform a background check before transferring most types of firearms to non-licensees. *See* 18 U.S.C. § 922(t)(1); 28 C.F.R. § 25.1; *but see* 18 U.S.C. § 922(t)(3) (identifying the types of firearm transfers exempt from NICS requirement). For the traditional types of firearm transfers in which 18 U.S.C. § 922(t)(1) applies, a licensee is prohibited from transferring a firearm to any other person who is not licensed under 18 U.S.C. § 922, unless three circumstances exist under Federal law: (i) the licensee initiates a NICS background check; (ii) the NICS background check results in the NICS providing the licensee with a response of "proceed" or three business days have elapsed since the licensee contacted NICS and the system has not notified the licensee that the receipt of a firearm by such other person would violate § 922(g) or § 922(n); and (iii) the licensee has verified the identity of the transferee by examining a valid photo identification document of the transferee. *See* 18 U.S.C. § 922(t)(1) (stating prerequisites to transfer); 28 C.F.R. § 25.6(a).

When a NICS background check is initiated, the NICS Section electronically generates a NICS Transaction Number ("Transaction Number" or "NTN"), a number that is unique to each NICS transaction. 28 C.F.R. § 25.2 (definition of "NTN"); *id.* § 25.6(c)(ii). The "primary purpose" of the Transaction Number "will be to provide a means of associating inquiries to the NICS with the responses provided by the NICS to the [licensees]" regarding the results of the NICS background check. *Id.* § 25.2.

To conduct the background check, the NICS verifies that the seller is licensed, and it conducts a search of databases for any records suggesting that the transferee is prohibited from

acquiring a firearm, and issues a determination that the transaction may proceed, is denied, or is delayed. 28 C.F.R. § 25.6(c). The three electronic databases searched by NICS are the (1) Interstate Identification Index, which provides access to criminal history records; (2) National Crime Information Center, which contains records of wanted persons, subjects of protection orders, and other persons who may pose a threat to officer and public safety; and (3) NICS Index (or NICS Indices), which contain information on prohibited persons subject to federal and state firearm prohibitions. Declaration of David Alan Fazzini dated Aug. 2, 2024 ("Fazzini Decl.") ¶ 7, enclosed herewith; 28 C.F.R. §§ 25.2, 25.4. Records contributed to these national databases are modified, cancelled, and added daily. Fazzini Decl. ¶ 7.

For those transactions in which the NICS Section cannot provide a definitive response of either proceed or deny, the transaction will be placed in a "delayed" status for further research. 28 C.F.R. § 25.6(c)(iv)(B). The NICS Section conducts research on delayed transactions to determine whether the record(s) in question demonstrates that receipt of a firearm by the potential transferee would violate subsection (g) or (n) of the Gun Control Act or state law. *Id.* § 25.6(c)(iv)(B); 28 C.F.R. § 25.2 (definition of "Open"). Transactions remaining unresolved after their Brady Act transfer date (i.e., the day after the third business day), will remain "open" for further research. 28 C.F.R. § 25.2 (definition of "Open"). But if three business days pass since the licensee initiated a NICS background check without a decision from the NICS Section, as relevant here, the licensee may transfer the firearm according to federal law. *See* 18 U.S.C. § 922(t)(1); *see also* 28 C.F.R. § 25.6(c).

### III.   <u>Available Routes for Denied or Delayed Responses</u>

If NICS denies a transfer initiated by a licensee and the transferee believes he has been erroneously denied, the transferee may file an administrative request for an explanation of the denial and can subsequently appeal the denial by filing a written "challenge" with the FBI CJIS

Division's NICS Section. *See* 28 C.F.R. § 25.10(a), (d); FBI, Appeals and Voluntary Appeal File, https://www.fbi.gov/how-we-can-help-you/more-fbi-services-and-information/nics/national-instant-criminal-background-check-system-nics-appeals-vaf (last visited Aug. 2, 2024).

In addition, any person can apply for the Voluntary Appeal File, which is a process that permits applicants to request the NICS maintain information about the applicant in the Voluntary Appeal File. *See* FBI, Appeals and Voluntary Appeal File, https://www.fbi.gov/how-we-can-help-you/more-fbi-services-and-information/nics/national-instant-criminal-background-check-system-nics-appeals-vaf (last visited Aug. 2, 2024); 28 C.F.R. § 25.10(g). The Voluntary Appeal File was established to prevent future erroneous denials or extended delays of a firearm transfer. *See id.* An applicant who is accepted and entered into the Voluntary Appeal File is given a Unique Personal Identification Number (or "UPIN") that allows him to access his records to expedite a future transaction. *See id.* An Identification Number, however, is no guarantee to having no delay at all.

Besides filing an appeal, a person who is not prohibited from owning a firearm under 18 U.S.C. § 922(g) and is "denied a firearm pursuant to subsection (s) or (t) of section 922. . . . . . may bring an action against the State or political subdivision responsible for providing the erroneous information, or responsible for denying the transfer, or against the United States, as the case may be, for an order directing that the erroneous information be corrected or that the transfer be approved[ ]." 18 U.S.C. § 925A.

## IV.    **Retention and Destruction of Records Regarding NICS Inquiries**

The Brady Act requires all Transaction Numbers and their creation dates be retained indefinitely. 18 U.S.C. § 922(t)(2)(C). In addition, the FBI is required to maintain an automated NICS Audit Log of all incoming and outgoing transactions that pass through the system relating to the transfer of a firearm to include the type of transaction, the time and date of inquiry,

identifying information about the prospective transferee, and the Transaction Number. 28 C.F.R. § 25.9. The NICS Audit Log is used to conduct audits of the use and performance of NICS. *Id.*

For transactions that were "denied," NICS denied transaction records obtained or created during the operation of the system will be retained in the NICS Audit Log for ten years, after which time they will be transferred to an appropriate FBI-maintained electronic database. 28 C.F.R. § 25.9(b)(1)(i). For transactions that are in "open status," or were "delayed"[1] all records, except the Transaction Number and date, will be destroyed after not more than ninety days from the date of inquiry. *Id.* § 25.9(b)(1)(ii). Finally, for transactions in which NICS issued a "proceed" response (i.e., an "allowed" transaction), all identifying information submitted by or on behalf of the purchaser will be destroyed within twenty-four hours after the licensee receives communication of the determination that the transfer may proceed. *Id.* § 25.9(b)(1)(iii). All other information, except the Transaction Number and date, will be destroyed after not more than ninety days from the date of inquiry. *Id.*

## FACTUAL BACKGROUND[2]

Before December 2021, Plaintiff alleges he attempted to purchase firearms from a local gun store in Suffolk County, New York. Compl. ¶¶ 39-40. He alleges that the transactions "were both erroneously denied by NICS." *Id.* ¶ 41. When his attorney reached out to the FBI to obtain

---

[1]    Under 28 C.F.R. § 25.2, "[o]pen means those non-canceled transactions where the [licensee] has not been notified of the final determination." In cases of "open" responses, "the NICS continues researching potentially prohibiting records regarding the transferee and, if definitive information is obtained, communicates to the [licensee] the final determination that the check resulted in a proceed or a deny. An 'open' response does not prohibit [the licensee] from transferring a firearm after three business days have elapsed since the [licensee] provided to the system the identifying information about the prospective transferee." *Id.*

[2]    Defendants assume only for purposes of Defendants' motion under Rule 12(b)(6) that the allegations in Plaintiff's Complaint are true. For purposes of its Rule 12(b)(1) motion or alternative Rule 56 motion, Defendants attach the Fazzini Declaration.

the grounds for the denial, Plaintiff alleges the FBI via letter dated February 1, 2022, explained that the two transactions were "'too old'" and "the agency no longer had any information related thereto." *Id.* ¶¶ 42-43. Plaintiff attempted to purchase a firearm for the third time, which he alleges was "denied" by NICS. *Id.* ¶ 44. After Plaintiff's attorney again asked the FBI why the transactions had been denied, FBI allegedly explained via letter dated April 18, 2022, that Plaintiff's purchase was not "'denied'" but was rather "'delayed.'" *Id.* ¶¶ 45-46.

On July 31, 2024, the FBI conducted a review of the NICS Audit Log for the three Transaction Numbers Plaintiff identifies in his Complaint: 1024R79DH, 10266GXTX, and 102F34T8B. Fazzini Decl. ¶¶ 2, 17; Compl. ¶¶ 42-45. Transaction Number 1024R79DH was created on August 13, 2021, and the information was then purged on November 9, 2021. *Id.* ¶ 17(a). Transaction Number 10266GXTX was created on September 22, 2021, and the information was then purged on December 19, 2021. *Id.* ¶ 17(b). Transaction Number 102F34T8B was created on March 24, 2022, and the information was then purged on June 20, 2022. *Id.* ¶ 17(c). Because all information about those three Transaction Numbers were purged within ninety days pursuant to 28 C.F.R. § 25.9, available information indicates that these transactions were not denied. *Id.* ¶¶ 17-18.

Around January 2023, Plaintiff alleges that he filed a Voluntary Appeal File application. Compl. ¶ 48. On April 17, 2023, the FBI sent a letter to Plaintiff informing him that he was "'not eligible to be entered into the [Voluntary Appeal File]'" because he was listed in the NICS database as a prohibited person under 18 U.S.C. §§ 922(g)(8) and (9). Compl. ¶¶ 51-54, 57. Section 922(g)(8) prohibits persons from owning a firearm if, among other things, were subject to a protective order involving an intimate partner or child. And, Section 922(g)(9) prohibits persons from owning a firearm if they been "convicted in any court of a misdemeanor crime of domestic

violence." Plaintiff admits that he has a state conviction for misdemeanor attempted assault and was subject to a protective order. Compl. ¶¶ 58-59, 72-76. But Plaintiff disputes that his state criminal conviction for misdemeanor attempted assault or protective order involved domestic violence. *See id.*

On July 12, 2023, Plaintiff's attorney responded to the FBI's Voluntary Appeal File application determination by sending additional information about the circumstances of his state conviction for misdemeanor attempted assault. *See id.* ¶¶ 72-76. Via letter dated January 21, 2024, the FBI is alleged to have explained to Plaintiff that he should file another Voluntary Appeal File application. *Id.* ¶ 79. Plaintiff's attorney sent another "packet" to FBI on January 24, 2024, with the same information previously sent on July 12, 2023. *Id.* ¶¶ 77-78. To date, Plaintiff has not submitted another Voluntary Appeal File application.

On March 28, 2024, Plaintiff filed suit in this Court, alleging claims under 18 U.S.C. § 925A, the Second Amendment, and the Fifth Amendment in connection with the FBI's response to his Voluntary Appeal File application. Compl., ECF No. 1.

## LEGAL STANDARDS

### I.    <u>Rule 12(b)(1)</u>

"The question of whether the United States has waived its sovereign immunity against suit[] . . . is, in the first instance, a question of subject matter jurisdiction."  *McCarthy v. United States*, 850 F.2d 558, 560 (9th Cir. 1988); *Yee v. Jewell*, 228 F. Supp. 3d 48, 53 (2017) (subject matter jurisdiction turns on whether "Congress has waived the United States' immunity to suit").

A court must dismiss a case when it lacks subject matter jurisdiction pursuant to Rule 12(b)(1). To determine whether there is jurisdiction, the Court may "consider the complaint supplemented by undisputed facts evidenced in the record, or the complaint supplemented by undisputed facts plus the court's resolution of disputed facts." *Vico Prods. Co. v. Nat'l Lab. Rels.*

*Bd.*, 333 F.3d 198, 198 (D.C. Cir. 2003) (citations omitted); *see also Jerome Stevens Pharm., Inc. v. FDA*, 402 F.3d 1249, 1253 (D.C. Cir. 2005) ("[T]he district court may consider materials outside the pleadings in deciding whether to grant a motion to dismiss for lack of jurisdiction.").

It is the plaintiff's burden to prove subject matter jurisdiction by a preponderance of the evidence. *Am. Farm Bureau v. EPA*, 121 F. Supp. 2d 84, 90 (D.D.C. 2000). "Although a court must accept as true all factual allegations contained in the complaint when reviewing a motion to dismiss pursuant to Rule 12(b)(1), [a] plaintiff['s] factual allegations in the complaint . . . will bear closer scrutiny in resolving a 12(b)(1) motion than in resolving a 12(b)(6) motion for failure to state a claim." *Wright v. Foreign Serv. Griev. Bd.*, 503 F. Supp. 2d 163, 170 (D.D.C. 2007) (internal citations and quotation marks omitted). A court need not accept as true "a legal conclusion couched as a factual allegation" or an inference "unsupported by the facts set out in the complaint." *Trudeau v. FTC*, 456 F.3d 178, 193 (D.C. Cir. 2006) (internal citation and quotation marks omitted).

## II.    <u>Rule 12(b)(6)</u>

A motion made under Rule 12(b)(6) tests whether a complaint has successfully "state[d] a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). While detailed factual allegations are not necessary to withstand a Rule 12(b)(6) challenge, a plaintiff must nonetheless provide "more than labels or conclusions" or "a formulaic" recitation of the elements of a cause of action." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555-56 (2007). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570).

A claim is facially plausible only when a plaintiff pleads factual content that enables the Court to "draw [a] reasonable inference that the defendant is liable for the misconduct alleged."

*Iqbal*, 556 U.S. at 678. While the Court must assume that any "well-pleaded factual allegations" in a complaint are accurate, conclusory allegations "are not entitled to the assumption of truth." *Id.* at 679. Furthermore, the Court "need not accept inferences drawn by the plaintiff if such inferences are unsupported by the facts set out in the complaint. Moreover, the court is not bound to accept as true a legal conclusion couched as a factual allegation." *Jack's Canoes & Kayaks, LLC v. Nat'l Park Serv.*, 937 F. Supp. 2d 18, 27 (D.D.C. 2013) (internal quotation marks and citations omitted). A complaint that "pleads facts that are merely consistent with a defendant's liability, [] stops short of the line between possibility and plausibility of entitlement to relief," and is insufficient to withstand a Rule 12(b)(6) motion to dismiss. *Iqbal*, 556 U.S. at 679 (quoting *Twombly*, 550 U.S. at 55, 557) (internal quotation marks omitted).

### III.    <u>Rule 56</u>

Summary judgment is appropriate when the pleadings and evidence show "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A "material fact" is one whose existence affects the outcome of the case. *Id.* at 248. A "genuine dispute" exists when the non-movant produces sufficient evidence of a material fact so that a fact finder is required to resolve the parties' differing versions at trial. *Id.* at 249.

Summary judgment endeavors to streamline litigation by disposing of factually unsupported claims or defenses and thereby determining whether trial is genuinely necessary. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323–24 (1986). The movant bears the initial burden of identifying portions of the record that demonstrate the absence of any genuine issue of material fact. *See* Fed. R. Civ. P. 56(c)(1); *Celotex*, 477 U.S. at 323. In response, the non-movant must point to specific facts in the record that reveal a genuine issue that is suitable for trial. *See Celotex*, 477 U.S. at 324; *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 575 (1986)). A

moving party may therefore succeed on summary judgment by showing that the non-moving party "fail[ed] to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322. A moving party may also succeed by pointing to the absence of evidence proffered by the nonmoving party. *Id.*

In considering a motion for summary judgment, a court must "eschew making credibility determinations or weighing the evidence[,]" *Czekalski v. Peters*, 475 F.3d 360, 363 (D.C. Cir. 2007), and all underlying facts and inferences must be analyzed in the light most favorable to the non-movant, *Anderson*, 477 U.S. at 255 (1986). Nevertheless, conclusory assertions offered without any evidentiary support do not establish a genuine issue for trial. *See Greene v. Dalton*, 164 F.3d 671, 675 (D.C. Cir. 1999).

## ARGUMENT

## I.    Plaintiff Cannot Bring a Statutory Claim Under 18 U.S.C. § 925A.

Plaintiff is barred from asserting any statutory claim under 18 U.S.C. § 925A, *see* Compl. ¶¶ 6, 11, because all three of his requests to purchase a firearm were merely "delayed," and Section 925A does not contain a provision waiving the sovereign immunity of the government to be sued in connection with allegedly erroneous "delayed" responses.

"It is axiomatic that the United States may not be sued without its consent and that the existence of consent is a prerequisite for jurisdiction." *United States v. Mitchell*, 463 U.S. 206, 212 (1983). "The government's consent to be sued may not be inferred, but must be 'unequivocally expressed' in statutory text." *Anderson v. Carter*, 802 F.3d 4, 8 (D.C. Cir. 2015) (quoting *FAA v. Cooper*, 566 U.S. 284, 290 (2012)). Moreover, a waiver of the Government's sovereign immunity "must be construed strictly in favor of the sovereign and not enlarged beyond what the [statute's]

language requires." *United States v. Nordic Vill. Inc.*, 503 U.S. 30, 34 (1992) (internal citations and quotations omitted).

In passing 18 U.S.C. § 925A as part of the Brady Act, Congress created a cause of action against the United States to allow suits seeking a court order (i) directing that erroneous information be removed from NICS; and/or (ii) approving a firearms transfer. However, Congress was clear that this remedy made available under Section 925A applies only when a person has been "denied a firearm pursuant to subsection (s) or (t) of 922." Section 922(s) is no longer in effect as its terms expired sixty months after the Brady Act's passage in 1993. Thus, an individual's right to relief under Section 925A can only arise when a person is "denied" transfer of a firearm after a licensee initiates a NICS check under Section 922(t). *See Ross v. Fed. Bureau of Alcohol, Tobacco, & Firearms,* 807 F. Supp. 2d 362, 373–74 (D. Md. 2011) ("Thus, for [Plaintiff] to state a claim against Defendants under § 925A, he must demonstrate that the NICS improperly provided a 'Denied' response.").

Here, Plaintiff alleges that before December 2021, his two firearms transactions were "erroneously denied by NICS." Compl. ¶¶ 39-41. But Plaintiff's conclusory allegation is neither plausible nor supported by the facts in his Complaint. As such, the Court "need not accept inferences drawn by the plaintiff if such inferences are unsupported by the facts set out in the complaint." *Jack's Canoes & Kayaks, LLC*, 937 F. Supp. 2d at 27. Here, Plaintiff alleges that after those two pre-December 2021 transactions, his attorney reached out to NICS to determine the basis of the alleged denials sometime after December 2021. Compl. ¶¶ 39-42. The FBI responded via letter on February 1, 2022, that "the transaction numbers were 'too old' and the agency no longer had any information related thereto." *Id.* ¶ 43.

- 12 -

Under FBI regulation, records of "denied" transactions are maintained in the NICS Audit Log for ten years and are then transferred to an appropriate FBI-maintained electronic database. 28 C.F.R. § 25.9(b)(1)(i). Any information about "delayed" transactions, except for the Transaction Number and date of inquiry, on the other hand, are purged from the NICS Audit Log within ninety days. 28 C.F.R. § 25.9(b)(1)(ii). The FBI is entitled to a presumption of regularity that "supports the official acts of public officers, and, in the absence of clear evidence to the contrary, courts presume that they have properly discharged their official duties." *United States v. Chem. Found.*, 272 U.S. 1, 14–15 (1926); *Sussman v. U.S. Marshals Serv.*, 494 F.3d 1106, 1117 (D.C. Cir. 2007) (applying presumption of regularity in determining whether federal agency properly discharged its FOIA obligations). As a result, had Plaintiff's transactions from 2021 been actually "denied," as Plaintiff alleges, FBI would still have records of those "denied" transactions in its NICS Audit Log since they occurred within the last ten years. However, as Plaintiff himself alleges, FBI did not have any other records of these two 2021 transactions as of February 2022, the Court at the very least must presume that the two pre-December 2021 transactions were never "denied."

Indeed, this conclusion is supported by Plaintiff's other allegation: Plaintiff alleges that when he tried to purchase a firearm for the third time, FBI confirmed to Plaintiff on April 18, 2022, that Plaintiff's purchase "was not 'denied' but 'delayed.'" Compl. ¶ 46. As a result, Plaintiff fails to plausibly allege that any of the three transactions were ever denied as a result of the NICS background check process.

FBI has reviewed information in its NICS Audit Log for the three Transaction Numbers alleged by Plaintiff in 2021 and 2022 and has determined that all information about these three Transaction Numbers were purged within ninety-days of the date of inquiry by NICS. Fazzini

Decl. ¶¶ 2, 17-18. FBI has therefore concluded that information indicates none of Plaintiff's three transactions were ever denied. *Id.* And they certainly are not in a denied status as of the time NICS searched the Audit Log in 2024 for those Transaction Numbers. *Id.*

Because Section 925A does not allow the United States, or its officials in their official capacities, to be sued for mere "delayed" decisions from a NICS background check, the United States did not waive its sovereign immunity to be sued with respect to "delayed" decisions. The Court, therefore, does not have subject matter jurisdiction over Plaintiff's Section 925A challenge. Alternatively, because Plaintiff fails to plausibly allege that he was ever denied a firearms transaction under 18 U.S.C. § 922(t), he fails state a claim under Section 925A. Therefore, under either standard, the Court should dismiss Plaintiff's statutory claim under Section 925A. Alternatively, should the Court need to review any evidence outside of the Complaint, including the Fazzini Declaration, the Court should nonetheless grant summary judgment for Defendant.

## II.    Plaintiff Fails to State a Second Amendment Claim.

Plaintiff also fails to allege a claim under the Second Amendment. The Supreme Court in *Bruen* rejected the application of a two-step approach to assess the constitutionality of firearm-related provisions challenged on Second Amendment grounds. 597 U.S. at 18-19. Instead, *Bruen* noted that only Step One of the inquiry was relevant, that is, whether "the government may justify its regulation by 'establish[ing] that the challenged law regulates activity falling outside the scope of the right as originally understood.'" *Id. Bruen* noted that this inquiry "demands a test rooted in the Second Amendment's text, as informed by history." *Id.*

Here, Plaintiff appears to challenge the Brady Act provisions and implementing regulations that permit the FBI to delay a decision on a NICS background check to conduct further inquiry into the purchaser's criminal history. *See* Compl. ¶¶ 24-38. But the Supreme Court has squarely identified background-check regulations, as Plaintiff was subject to here, as "presumptively

lawful." *District of Columbia v. Heller*, 554 U.S. 570, 626–27 & n.26 (2008) (identifying "laws imposing conditions and qualifications on the commercial sale of arms" as "presumptively lawful"); *Bruen*, 597 U.S. at 38 n.9 (noting that "nothing in our analysis should be interpreted to suggest the unconstitutionality of the 43 States' 'shall-issue' licensing regimes" since "these shall-issue regimes, which often require applicants to undergo a background check . . . , are designed to ensure only that those bearing arms in the jurisdiction are, in fact, 'law-abiding, responsible citizens.'"); *id.* at 80 ("shall-issue licensing regimes are constitutionally permissible, subject of course to an as-applied challenge if a shall-issue licensing regime does not operate in that manner in practice" (citation omitted)) (Kavanaugh, J., concurring, joined by Roberts, C.J.); *see also McRorey v. Garland*, 99 F.4th 831, 839 (5th Cir. 2024) (rejecting Second Amendment challenge to background-check's waiting periods because "*Bruen* and *Heller* make clear that background checks preceding firearm sales are presumptively constitutional").

And there is nothing here to suggest that the background check conditions imposed by the Brady Act and implementing regulations have been "put toward abusive ends" to refute that presumption of constitutionality. *See Bruen*, 597 U.S. at 38 n.9 (finding that "lengthy waiting times" could effectively "deny ordinary citizens their right to" bear arms). Under the Brady Act, if NICS has not followed up with the licensee within three business days of an attempted purchase, the licensee is automatically permitted to complete the sale. 18 U.S.C. § 922(t)(1)(C)(ii). Therefore, the maximum amount of time that someone like Plaintiff would have to wait is three business days before purchasing a firearm. To the extent Plaintiff laments that licensees exercise their discretion not to proceed with a firearms transaction after the FBI issues a "delayed" response, that does not demonstrate the government violated Plaintiff's constitutional right. "[A] third party's 'legitimate discretion' breaks the chain of constitutional causation." *Turaani v. Wray*, 988

F.3d 313, 317 (6th Cir. 2021); *McRorey*, 99 F.4th at 839 (rejecting Second Amendment challenge to waiting periods).

In support of its Second Amendment challenge, Plaintiff cites solely to an out-of-Circuit decision, *Ross v. Fed. Bureau of Alcohol, Tobacco, Firearms, & Explosives*, 903 F. Supp. 2d 333 (D. Md. 2012). *See* Compl. ¶¶ 31-32. But that case is inapposite as it did not even involve a Second Amendment challenge. The Court had dismissed Plaintiff's Second Amendment claim, finding that specific identified provisions of the Gun Control Act's restrictions on firearm possession were constitutional under the Second Amendment. *See Ross*, 903 F. Supp. 2d at 334 (citing *Ross*, 807 F. Supp. 2d at 371-73 (dismissing Second Amendment claim)).

Moreover, as it relates to any as-applied challenge under the Second Amendment, Plaintiff fails to allege that Defendants ignored the legally required procedural process in delaying Plaintiff's firearms transactions and then rejecting his Voluntary Appeal File application. Plaintiff's Complaint—particularly, his gripe that the FBI is allegedly unlawfully "shifting the burden" to him to provide information regarding his criminal background—seems to advance the argument that not only must Defendants establish a formal appeal process but as part of that process Defendants must also be obligated to (i) correct any and all erroneous information in NICS that could result in an erroneous delay regardless of the information's original source; (ii) research and obtain background information on the delayed applicant's behalf to correct information in NICS; and (iii) process a challenge to an allegedly erroneous delayed decision.

But Plaintiff fails to cite any statutory, regulatory, or other authority that mandates the creation of a formal appeal process for review of mere delayed decisions regarding a firearm transfer request. Plaintiff points to 28 C.F.R. § 25.10, as authority that "FBI has an obligation to verify the records in its system with the originating agency and take all necessary steps to correct

the record in NICS." Compl. ¶ 24; *see id.* ¶¶ 30, 68. But Plaintiff's interpretation of this regulation is both overly broad and inaccurate. This regulation was promulgated pursuant to the Brady Act's requirement that an appeals process be established in connection with firearm transfer applications "denied" under that statute. *See* 34 U.S.C. § 40901(g). In contrast, neither the Brady Act nor any regulation promulgated thereunder brings applications merely delayed within the scope of the appeals procedures established to implement the Brady Act's requirements. *See id*; 28 C.F.R. § 25.10.

Moreover, Plaintiff has multiple avenues which he can pursue to have the information corrected or updated, including contacting the agency that submitted the information to NICS and having that agency submit supplemental or correcting information to the appropriate system. Indeed, the FBI informed Plaintiff of this route. *See* Compl. ¶ 67. Requiring Plaintiff to pursue record correction through the agency that entered the incomplete or inaccurate record is reasonable, especially considering that federal regulations generally require criminal justice agencies reporting records to NICS to "institute a process of data collection, entry, storage, and systematic audit that will minimize the possibility of recording and storing inaccurate information and upon finding inaccurate information of a material nature, [the criminal justice agency] shall notify all criminal justice agencies known to have received such information." 28 C.F.R. § 20.21(a); *see also* 28 C.F.R. § 20.37 ("It shall be the responsibility of each criminal justice agency contributing data to the [Interstate Identification Index] System and the [Fingerprint Identification Records System] to assure that information on individuals is kept complete, accurate, and current so that all such records shall contain to the maximum extent feasible dispositions for all arrest data included therein."); 28 C.F.R. § 25.5(b) ("Each data source will be

responsible for ensuring the accuracy and validity of the data it provides to the NICS Index and will immediately correct any record determined to be invalid or incorrect.").

Furthermore, should Plaintiff disagree with the results of the FBI's initial determination on his Voluntary Appeal File, he is not prohibited from submitting another such application for FBI's consideration. *See* 28 C.F.R. § 25.10(g); FBI, Appeals and Voluntary Appeal File, https://www.fbi.gov/how-we-can-help-you/more-fbi-services-and-information/nics/national-instant-criminal-background-check-system-nics-appeals-vaf (last visited Aug. 2, 2024). Indeed, Plaintiff admits that FBI asked him to submit another Voluntary Appeal File application so that the FBI may be able to consider the circumstances of his criminal conviction to prevent future extended delays. *See* Compl. ¶ 79. And Plaintiff has not alleged any reason why he would be prejudiced for doing so.

For these reasons, Plaintiff fails to identify any Second Amendment violation in connection with FBI's "delayed" responses to NICS inquiries for Plaintiff's firearms transactions, or its later rejection of his Voluntary Appeal File application. Alternatively, summary judgment should be granted for Defendants based on these undisputed facts.

## III.    **Plaintiff Fails to State a Fifth Amendment Due Process Claim.**

To the extent that Plaintiff alleges a due process violation under the Fifth Amendment, that claim also fails. *See* Compl. ¶ 35. Plaintiff fails to allege either a substantive or procedural due process claim.

"Where a particular Amendment provides an explicit textual source of constitutional protection against a particular sort of government behavior, that Amendment, not the more generalized notion of substantive due process, must be the guide for analyzing these claims." *Graham v. Connor*, 490 U.S. 386, 395 (1989). Here, the source and substance of Plaintiff's claims is the argument that Defendants' current procedures (or lack of procedures) deprived him of his

right to bear and keep arms without due process. Although the right to keep and bear arms for self-defense is a fundamental right, it is undeniable that this right is established in and protected by the Second Amendment.

Accordingly, because Plaintiff's claims purport to protect the right to keep and to bear arms, they are more appropriately analyzed under the Second Amendment than Fifth Amendment Due Process. *See United States v. Carey*, 602 F.3d 738, 741 n.2 (6th Cir. 2010) (reviewing Second Amendment argument, but declining to consider claims that "conflate the enumerated Second Amendment right with Equal Protection and Due Process protections under the Fifth Amendment"); *United States v. Portillo-Munoz*, 643 F.3d 437, 442 & n.4 (5th Cir. 2011) (concluding that defendant had waived due process challenge to 18 U.S.C. § 922(g)(5), prohibiting firearms possession by illegal aliens, and also that "[i]f we were to reach the merits of [defendant's] due process claim, we would find his arguments wholly unconvincing" because "the Second Amendment explicitly provides for a constitutional right to bear arms, [and thus, defendant] cannot look to the due process clause as an additional source of protection for a right to keep and bear arms").

Indeed, Plaintiff also cannot establish a procedural due process claim. "There are three basic elements to a procedural due process claim: there must be (1) a deprivation; (2) of life, liberty, or property; (3) without due process of law." *Lightfoot v. District of Columbia*, 273 F.R.D. 314, 319 (D.D.C. 2011) (citing *Propert v. District of Columbia*, 948 F.2d 1327, 1331 (D.C. Cir. 1991)). Further, the deprivation must be the result of action by the government. *See Am. Mfrs. Mut. Ins. Co. v. Sullivan*, 526 U.S. 40, 50 (1999). Due process is a flexible concept that varies with the particular situation. To determine what procedural protections the Constitution requires in a particular case, courts are instructed to weigh several factors:

> First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail.

*Mathews v. Eldridge*, 424 U.S. 319, 335 (1976). Here, Plaintiff's Complaint makes clear that his procedural due process claim is premised on the identical conduct and allegations as his claim brought under the Second Amendment. *See* Compl. ¶ 86 (incorporating by reference Paragraphs 1-85 to establish Second Amendment claim); *id.* ¶ 35 (raising due process challenge based on purported "denial" of firearms transaction). Thus, for the same reasons that Plaintiff's Second Amendment claims fail, his procedural due process claim also fails.

As for Plaintiff's alleged substantive due process claim, assuming he has properly alleged one, it should also be dismissed. A violation of "substantive" due process occurs only where the government's actions in depriving a person of life, liberty, or property are so unjust that no amount of fair procedure can rectify them. Put another way, "[s]ubstantive due process protects against 'government power arbitrarily and oppressively exercised,' but 'only the most egregious official conduct can be said to be 'arbitrary in the constitutional sense.'" *Jefferson v. Harris*, 285 F. Supp. 3d 173, 184 (D.D.C. 2018) (quoting *Cnty. of Sacramento v. Lewis*, 523 U.S. 833, 846 (1998)). Here, Plaintiff's substantive due process claim amounts to little more than stating in conclusory fashion that "[d]enying a firearm transaction based on incomplete or non-disqualifying information leaves Plaintiff and similarly situated individuals without any remedy prior to the termination of a constitutional right, which violates the right to due process." *See* Compl. ¶ 35. This is insufficient to establish the type of egregious conduct that the substantive due process provision is intended to remedy.

The Court should dismiss Plaintiff's Fifth Amendment due process claim, to the extent that the Complaint could be construed as raising one.

**IV.    Plaintiff's Claim for Monetary Damages is Barred by Sovereign Immunity.**

To the extent that Plaintiff seeks monetary damages, *see* Compl. ¶ 85, that is barred by the doctrine of sovereign immunity. As noted above, the United States cannot be sued except through a waiver of sovereign immunity. *See supra* § I. Here, under either Section 925A, the Second Amendment, or the Fifth Amendment, the United States has not waived its sovereign immunity to be sued for monetary damages.

The language of 18 U.S.C. § 925A does not allow the recovery of monetary damages. Indeed, Section 925(A) expressly only allows a potential litigant to obtain "an order directing that the erroneous information be corrected or that the transfer be approved, as the case may be." Section 925A also allows the Court to award as its "discretion," "the prevailing party a reasonable attorney's fee as part of its costs." Nowhere does the language of Section 925A allow for the recovery of monetary damages.

Moreover, while the Federal Tort Claims Act ("FTCA") waives the United States' immunity as to certain common law torts, *see* 28 U.S.C. §§ 1346(b)(1), 2679(b), Plaintiff does not allege common law torts, and the FTCA does not apply to constitutional tort claims such as those made by Plaintiff. *See FDIC v. Meyer*, 510 U.S. 471, 478 (1994); *Clark v. Libr. of Cong.*, 750 F.2d 89, 102-04 (D.C. Cir. 1984). Plaintiff, moreover, cannot sue Defendants in their official capacities directly under the Constitution as he does here because the doctrine of sovereign immunity bars constitutional claims for monetary damages against federal employees in their official capacities. *See Marshall v. Reno*, 915 F. Supp. 426, 434 (D.D.C. 1996); *Dickson v. United States*, 831 F. Supp. 893, 899 (D.D.C. 1993); *Robinson v. Pilgram*, Civ. A. No. 20-2965 (GMH), 2021 WL

5987016, at *9 (D.D.C. Dec. 17, 2021), *aff'd*, No. 22-5001, 2022 WL 3009621 (D.C. Cir. July 28, 2022).

Accordingly, the Court should dismiss any constitutional claims seeking monetary damages against the United States or individuals in their official capacities for lack of subject matter jurisdiction.

**CONCLUSION**

For these reasons, Defendants' Complaint should be dismissed, or alternatively, summary judgment should be granted for Defendants.

Dated: August 2, 2024          Respectfully submitted,
      Washington, DC

                                    MATTHEW M. GRAVES, D.C. Bar #481052
                                    United States Attorney

                                    BRIAN P. HUDAK
                                    Chief, Civil Division

                                    By:           */s/ Erika Oblea*
                                      ERIKA OBLEA, DC BAR #1034393
                                    Assistant United States Attorney
                                    601 D Street, NW
                                    Washington, DC 20530
                                    (202) 252-2567
                                    erika.oblea@usdoj.gov

                                    *Attorneys for the United States of America*