IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

------------------------------------------------------------x

GUISEPPE SEDITA,

                        Plaintiff,                        Civil Action No. 24-0900 (TNM)

            -against-

UNITED STATES OF AMERICA, et al.

                       Defendants.

------------------------------------------------------------x

# PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS/FOR SUMMARY JUDGMENT

**THE BELLANTONI LAW FIRM, PLLC**
*Attorneys for Plaintiff*
**2 Overhill Road, Suite 400**
**Scarsdale, New York 10583**
**abell@bellantoni-law.com**

## TABLE OF CONTENTS

**Page(s)**

TABLE OF AUTHORITIES.................................................................................................... i

PRELIMINARY STATEMENT........................................................................................... 1

STANDARD FOR MOTION PURSUANT TO FED. R. CIV. P. 12(b)(6), (1)............................. 1

FACTS TO BE CONSTRUED IN FAVOR OF THE PLAINTIFF1  (ABRIDGED).................... 2

I.  PLAINTIFF'S CLAIM UNDER 18 U.S.C. § 925A IS PROPER............................................. 6

II. THE GOVERNMENT FAILED TO MEET ITS BURDEN UNDER THE *BRUEN* TEST ...... 9

    A. The Government Improperly Placed the Burden on Plaintiff To Prove He
    is *Not* a 'Prohibited Person' ............................................................................................ 10

    B. The Supreme Court's Nod Toward Background Checks Does Not
    Justify Defendants' Conduct ............................................................................................. 11

    C. Denial of Plaintiff's VAF Application, and Continued Inclusion of False Negative
    Information About Plaintiff in Defendants' Database, Further Violates  Plaintiff's
    Rights ................................................................................................................................ 12

CONCLUSION.................................................................................................................. 13

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Bailey v. Washington Metro. Area Transit Auth.*,
    696 F. Supp. 2d 68 (D.D.C. 2010) ............................................................ 1, 2

*Celotex Corp. v. Catrett*,
    477 U.S. 317 (1986) ............................................................ 12

\* *D.C. v. Heller*,
    554 U.S. 570 (2008) ............................................................ 6, 9

*Fed. Trade Comm'n v. Endo Pharms. Inc.*,
    82 F.4th 1196 (D.C. Cir. 2023) ............................................................ 1

*Herbert v. Nat'l Acad. of Scis.*,
    974 F.2d 192 (D.C.Cir.1992) ............................................................ 2

*In re Swine Flu Immunization Prod. Liab. Litig.*,
    880 F.2d 1439 (D.C. Cir. 1989) ............................................................ 2

*Loper Bright Enterprises v. Raimondo*,
    144 S. Ct. 2244 (2024) ............................................................ 7

\* *New York State Rifle & Pistol Ass'n, Inc. v. Bruen*,
    597 U.S. 1 (2022) ............................................................ 9, 10

*Ross v. Fed. Bureau of Alcohol, Tobacco, & Firearms*,
    807 F. Supp. 2d 362 (D. Md. 2011) ............................................................ 8

\* *Ross v. Fed. Bureau of Alcohol, Tobacco, Firearms, & Explosives*,
    903 F. Supp. 2d 333 (D. Md. 2012) ............................................................ 8, 10, 11

**Statutes**

18 U.S.C. § 922(g)(8) ............................................................ 2, 4, 5
18 U.S.C. § 922(g)(9) ............................................................ 3, 5
18 U.S.C. § 925A ............................................................ 6, 7, 8, 9
18 USC § 922(g) ............................................................ 4, 7

**Rules**

Fed. R. Civ. P. 12(b)(6) ............................................................ 1, 2
Fed. R. Civ. P. 12(b)(1) ............................................................ 1

**Regulations**

28 C.F.R. § 25.6 .......................................................................................................... 6, 11

## PRELIMINARY STATEMENT

Plaintiff, Giuseppe Sedita, by and through his attorneys, submits the within Memorandum of Law, Counterstatement of Facts, and Declaration of Amy L. Bellantoni with annexed exhibits in opposition to the government's motion to dismiss and/or for summary judgment.

Plaintiff seeks a court order enjoining the defendants from continuing to maintain false information about him in the NICS database, which was created by defendants' agencies and (i) has prevented and continues to prevent Plaintiff from (i) acquiring firearms and ammunition at the point of purchase, and (ii) being entered into the NICS Voluntary Appeals File to prevent future barriers to acquiring firearms and ammunition.

## STANDARD FOR MOTION PURSUANT TO FED. R. CIV. P. 12(b)(6), (1)

To survive a motion to dismiss, a complaint must have 'facial plausibility,' meaning it must plead factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. *Fed. Trade Comm'n v. Endo Pharms. Inc.*, 82 F.4th 1196, 1203 (D.C. Cir. 2023) (cleaned up) (citations omitted).

In evaluating a Rule 12(b)(6) motion, the Court must construe the complaint in favor of the plaintiff, who must be granted the benefit of all inferences that can be derived from the facts alleged. Factual allegations, although assumed to be true, must still be enough to raise a right to relief above the speculative level. But the Court need not accept inferences drawn by plaintiff if those inferences are not supported by the facts set out in the complaint, nor must the court accept legal conclusions cast as factual allegations. *Id.* (cleaned up) (citations omitted).

Because subject matter jurisdiction focuses on the court's power to hear the claim, however, the court must give the plaintiff's factual allegations closer scrutiny when resolving a Rule 12(b)(1) motion than would be required for a Rule 12(b)(6) motion for failure to state a claim, and is not limited to the allegations contained in the complaint. *Bailey v. Washington Metro. Area Transit*

*Auth.*, 696 F. Supp. 2d 68, 71 (D.D.C. 2010) (citations omitted). When necessary, the court may consider the complaint supplemented by undisputed facts evidenced in the record, or the complaint supplemented by undisputed facts plus the court's resolution of disputed facts. *Id.* citing, *Herbert v. Nat'l Acad. of Scis.*, 974 F.2d 192, 197 (D.C.Cir.1992).

Where the court is considering matters outside of the pleadings when determining a 12(b)(1) motion, the proper approach is to look to the standard of Rule 56, rather than to the stricter standard of Rule 12(b)(6), for guidance: whether the plaintiff has demonstrated that a reasonable factfinder could rule in his favor. *In re Swine Flu Immunization Prod. Liab. Litig.*, 880 F.2d 1439, 1443 (D.C. Cir. 1989).

### FACTS TO BE CONSTRUED IN FAVOR OF THE PLAINTIFF[1] (ABRIDGED)

Plaintiff has no disqualifiers to the possession, purchase, receipt, and/or transfer of firearms under state or federal law [Ex. 1 at ¶ 9]. Plaintiff has a criminal conviction for misdemeanor Attempted Assault in the Third Degree and Attempted Criminal Contempt in the Second Degree arising out of the Queens County Criminal Court, State of New York on October 12, 2001 [Ex. 4, p. 8-9]. Plaintiff's convictions do not involve crimes of domestic violence, nor do they meet any of the definitions under 18 U.S.C. § 922(g)(8), nor was Plaintiff the subject of an order of protection at any time relevant to the allegations in the Complaint [Ex. 1 at ¶¶55-59]. The complainant of the underlying charges was not an individual who falls into the category of a "qualifying relationship" status [Ex. 1 at ¶¶55-59, 78].

Plaintiff has been wrongfully denied and prohibited from exercising a fundamental constitutional right since 2021 based on the failure and/or refusal of a NICS investigator to properly ensure that the negative information about Plaintiff was based in fact [Ex. 1 at 78]. On

---

[1] Plaintiff fully incorporates the Complaint by reference herein.

three separate occasions between 2021 and the present date, Plaintiff has attempted to purchase firearms from a federal firearms licensee in New York State (FFL); on each occasion, Plaintiff has undergone a background check through defendants' NICS[2] database; and on each occasion NICS has created an absolute barrier to Plaintiff's ability to complete the purchase and receive a firearm at the point of purchase [Ex. 1 at ¶¶ 39-44]. The NTN transaction numbers for each purchase foiled by NICS are 1024R79DH, 10266GXTX, and 102F34T8B [Ex. 1 at ¶¶ 42, 45].

Whether Plaintiff's attempted acquisitions of a firearm were 'delayed' or 'denied' – it is indisputable that NICS created an absolute bar to Plaintiff's ability to complete every transaction between 2021 and 2022 because Defendants continue to erroneously identify Plaintiff as a "prohibited person" based on the 2001 Queens County conviction [Ex. 1 at ¶¶ 39-47, 52-59; Ex. 3, Ex. 4, Ex. 5].

Defendants are required to investigate the underlying information related to Plaintiff's prohibited record in NICS to ensure that Plaintiff's conviction met the standard of a prohibiting conviction [Ex. 1 at ¶60]. None of the information contained in Plaintiff's FBI and state criminal history reports indicates that his 2001 conviction for the misdemeanors of attempted assault and/or attempted criminal contempt was domestic violence related, identified the complainant, or indicated that the event was categorized as a "qualifying relationship" under 18 U.S.C. § 922(g)(9) [Ex. 1 at ¶ 61]. Defendants failed to perform the ministerial duty of verifying the information in its database to confirm that Plaintiff was properly identified therein [Ex. 1 at ¶¶ 62-64]. Had Defendants performed their statutory duty, it would have been revealed that Plaintiff has no disqualifying events and is not a "prohibited person" [Ex. 1 at 65-66].

---

[2] National Instant Criminal Background Check System.

Rather than correct the false information about Plaintiff, Defendants improperly placed the burden on Plaintiff to prove that he is *not* a prohibited person [Ex. 1 at ¶¶ 67-76, Ex. 3].

The Voluntary Appeal File is a "process that permits applicants to request the NICS maintain information about the applicant in the Voluntary Appeal File [Def. Br. at 5]. The VAF was established to prevent future erroneous denials or extended delays of a firearm transfer [*Id.*]. An applicant who is accepted and entered into the Voluntary Appeal File is given a Unique Personal Identification Number (or "UPIN") that allows him to access his records to expedite a Future transaction [*Id.*].

In March 2023, Plaintiff filed an application to enter the VAF to obtain a UPIN for the purpose of preventing NICS from barring his ability to acquire firearms at the point of sale [Ex. 2]. By letter dated April 17, 2023, Defendants denied Plaintiff's VAF application [Ex. 1 at ¶¶ 52-54], Ex. 3]. Defendants informed Plaintiff that he was "not eligible to be entered into the VAF" because he "falls under the following potentially prohibitive categories: suffered from a federal prohibitor under 18 USC § 922(g)" [Ex. 3]. A copy of Plaintiff's FBI Identity History Summary and/or  state-maintained criminal history was enclosed with the letter [Ex. 3]. The letter further informed that Plaintiff was listed in the NICS database as a prohibited person under 18 U.S.C. § 922(g)(8) as being "subject to a court order that (A) was issued after a hearing of which such person received actual notice, and at which such person had an opportunity to participate; (B) restrains such person from harassing, stalking, or threatening an intimate partner of such person or child of such intimate partner or person, or engaging in other conduct that would place an intimate partner in reasonable fear of bodily injury to the partner or child; and (C)(i) includes a finding that such person represents a credible threat to the physical safety of such intimate partner or child; or (ii) by its terms explicitly prohibits the use, attempted use, or threatened use of physical force

4

against such intimate partner or child that would reasonably be expected to cause bodily injury'" [Ex. 3].

Defendants never investigated and/or confirmed that Plaintiff was, in fact, a domestic violence misdemeanant [Ex. 1 at ¶¶ 55-66]. Such investigation would have revealed that he is not a prohibited person [*Id.*]. Defendants' April 17, 2023 letter improperly shifted the burden to Plaintiff to 'correct' the information maintained by the Queens County court – a fallacy because nothing in the Queens County database indicates that Plaintiff falls under 18 USC 922(g)(8) [Ex. 3, Ex. 4, Ex. 5].

In July 2023, and again in January 2024, Plaintiff provided the underlying criminal process related to the Queens County arrest, which contain no support for Defendants' position that his conviction falls under 18 USC 922(g)(8) [Ex. 1 at ¶¶ 72-78; Ex. 4, Ex. 5, Ex. 6]. In fact, the Orders of Protection issued in connection with the underlying criminal proceeding specifically indicate in their title: "ORDER OF PROTECTION Non Family Offense C.P.L. 530.13" [Ex. 1 at ¶ 76; Ex. 4, Ex. 5]. Defendants ignored Plaintiff's July 2023 packet and, in response to the January 2024 reiteration of the July 2023 packet, Defendants claimed they no longer had any information about Plaintiff and (infuriatingly) suggested that he "may wish to consider applying for a Unique Personal Identification Number (UPIN) through the FBI's VAF program" – the very program from which Defendants denied Plaintiff entry for being a "prohibited person," which he is not [Ex. 6, Ex. 3, Ex. 1 at ¶¶ 72-85, 9].

Nothing within information obtained from Queens County reasonably leads to the conclusion that Plaintiff's conviction involved a crime of domestic violence, such that he was a prohibited person under 18 U.S.C. § 922(g)(9) [Ex. 4, Ex. 5].

Defendants are obstructing Plaintiff's right to purchase of firearms based on speculation that he may be a prohibited person, in spite of documentary evidence that he is not, have improperly shifted the burden to Plaintiff to verify the records in their database, refuse to remove the negative/precluding information about Plaintiff from their database, refused to accept Plaintiff in to the VAF and issue him a UPIN, and otherwise have refused to remove the barriers to his Plaintiff's exercise of his Second Amendment-protected conduct [Ex. 1 at ¶¶ 80-85; Exs. 2-7].

## I.  PLAINTIFF'S CLAIM UNDER 18 U.S.C. § 925A IS PROPER

Plaintiff's 18 U.S.C. § 925A claim was properly brought and should not be dismissed.

The Government's argument that Plaintiff is barred from brining a claim under § 925A because his "requests to purchase a firearm were merely 'delayed'" is flawed.[3]

The Brady Act was enacted by Congress in 1994. 18 U.S.C. § 925A "Remedy for erroneous denial of firearm" was enacted on November 30, 1993.

28 C.F.R. § 25.6, upon which the government relies in its argument to dismiss Plaintiff's cause of action under § 925A, was created by the U.S. Department of Justice (DOJ) – Defendants – was enacted over 20 years later, on January 20, 2015.

Under § 25.6, the term and process of "delaying" a "Proceed" response from NICS was created from whole cloth, without regard for the Second Amendment. The "delay" status for a NICS check did not exist when 925A was enacted, nor was a "delay" contemplated when Congress enacted 925A.

---

[3] As an initial matter, the People do not "request" to exercise their Second Amendment rights – just like they do not 'request' to exercise their preexisting First Amendment rights, which are also 'guaranteed' individual rights under the Constitution. See, *D.C. v. Heller,* 554 U.S. 570, 592 (2008) ("it has always been widely understood that the Second Amendment, like the First and Fourth Amendments, codified a pre-existing right") [Def. Br. at 16].

According to the Second Amendment, the "delay" of a *preexisting* right is a "denial" because the right "shall not be *infringed*." The burden is on the government to prove that an individual is a "prohibited person" before it can interfere with the free exercise of a Natural right. To find otherwise turns the plain text on its head – and establishes what the Government felt so comfortable conveying in its motion[4]: that the People cannot exercise their Natural right without first seeking and receiving permission from the government – a view repugnant to the Constitution.

The "reading the court would have reached if no agency were involved[,] after applying all relevant interpretive tools" is that a "delay" would be considered a "denial" under the Brady Act. See e.g., *Loper Bright Enterprises v. Raimondo*, 144 S. Ct. 2244, 2266 (2024).

Every time Plaintiff attempts to purchase a firearm, NICS prevents the transaction. Whatever terminology the Government uses - "denied" or "delayed" – the barrier to Plaintiff's exercise of an enumerated right, for which he has no disqualifiers, will continue absent this Court's intervention. NICS is acting in the absence of any information that confirms Plaintiff is a prohibited person; indeed, in the face of documents that demonstrate that he is *not.*

Defendants manifested a disqualifier out of whole cloth and created a *presumptive* barrier to Plaintiff's Second Amendment-protected conduct. And even if that view was reasonable the *first* time, which Plaintiff does not concede in any fashion that it was, once the NICS investigators failed to confirm their suspicions, there was no reasonable basis to *continue* violating Plaintiff's rights.

Plaintiff falls squarely under § 925A. At the point of purchase, Plaintiff was "not [a person] prohibited from receipt of a firearm pursuant to subsection (g) or (n) of section 922," and he was

---

[4] Def. Br. at 16.

denied a firearm "by the national instant criminal background check system established under section 103 of the Brady Handgun Violence Prevention Act…" See, § 925A.

Plaintiff – a non-prohibited person - was denied of the ability to take the sought-after firearm out of the store and home with him that day as a direct result of Defendants' conduct.

Defendants' reliance on the 2011 decision in *Ross v. Fed. Bureau of Alcohol, Tobacco, & Firearms*, 807 F. Supp. 2d 362, 365 (D. Md. 2011) is misplaced. Indeed, a year later, the same court reached a conclusion that supports Plaintiff's claims.

In 2012, the court found that NICS acted improperly when it held the plaintiff's ability to purchase a firearm in "perpetual delay" status.

> Even assuming Ross's 1965 arrest for Assault on Female was "potentially prohibitive" in July 2010, Defendants cannot justify the position that it remained "potentially prohibitive" when Ross returned to All Pawn in February 2011.
>
> The NICS Section had its opportunity in July 2010 to verify whether transfer of a firearm to Ross would violate state or federal law based on the 1965 arrest.
>
> That it did not or could not do so precluded the NICS Section from finding the same record "potentially prohibitive" in a subsequent transaction or, by implication, in subsequent transactions ad infinitum.

*Ross v. Fed. Bureau of Alcohol, Tobacco, Firearms, & Explosives*, 903 F. Supp. 2d 333, 340–41 (D. Md. 2012) citing, 18 U.S.C.A. § 925A.

The *Ross* court went on to hold that the plaintiff "was improperly 'denied a firearm' within the meaning of 18 U.S.C. § 925A" based on NICS 'delays.' *Ross*, 903 F. Supp. 2d at 342.

Likewise, Plaintiff is being "subject to perpetual delay in attempting to purchase a firearm" because NICS "never acts within three days to deny the transfer" which "in a word, is tantamount to a denial." *Ross,* 903 F. Supp. 2d at 341. "The NICS Section, in short, was acting ultra vires when it informed Ross that, although it was 'unable to obtain complete disposition information'

about the 1965 arrest, the 'potentially prohibitive' criteria would subject his "future firearms transactions ... to a delay."

Similarly, Defendants' April 17, 2023 letter held Plaintiff out as falling under "potentially prohibitive categories" when denying his VAF application. This, along with three (3) consecutive 'delay' responses since 2021 establishes that Plaintiff will continue to be subject to "perpetual delays" when attempting to purchase firearms.

Defendants' motion to dismiss Plaintiff's claim under 18 U.S.C. § 925A should be denied.

## II. THE GOVERNMENT FAILED TO MEET ITS BURDEN UNDER THE *BRUEN* TEST

'The People' enjoy the guaranteed and presumed right to possess firearms. *D.C. v. Heller*, 554 U.S. 570, 592 (2008) (holding that the words of the plain text "guarantee the individual right to possess and carry weapons in case of confrontation," a conclusion that is "strongly confirmed by the historical background of the Second Amendment" which "codified a pre-existing right"); see also, *New York State Rifle & Pistol Ass'n, Inc. v. Bruen*, 597 U.S. 1, 24 (2022) ("When the Second Amendment's plain text covers an individual's conduct, the Constitution presumptively protects that conduct").

In *Bruen*, the Supreme Court announced the test to be applied in Second Amendment challenges. When the Second Amendment's plain text covers an individual's conduct, the Constitution presumptively protects that conduct. *Bruen*, 597 U.S. at 17.

Plaintiff's proposed conduct, possessing firearms, is presumptively protected by the plain text of the Second Amendment. *Heller,* 554 U.S. at 592.

To justify its regulation, the government may not simply posit that the regulation promotes an important interest. Rather, the government must demonstrate that the regulation is consistent with this Nation's historical tradition of firearm regulation. Only if a firearm regulation is

consistent with this Nation's historical tradition may a court conclude that the individual's conduct falls outside the Second Amendment's "unqualified command." *Bruen*, 597 U.S. at 17.

Defendants failed to meet their burden.

**A. The Government Improperly Placed the Burden on Plaintiff To Prove He is *Not* a 'Prohibited Person'**

The Government attempts to improperly shift the burden onto Plaintiff [Def. Br. at 2] ("Plaintiff fails to allege that FBI violated any statutory or regulatory requirements under the Brady Act in responding to the background check inquiries in this case") and at 16 ("Plaintiff fails to cite any statutory, regulatory, or other authority that mandates the creation of a formal appeal process for review of mere delayed decisions regarding a firearm transfer request") and at Ex. 3 where Defendants' April 17, 2023 letter directed that Plaintiff contact the Queens County court to challenge the rejection of his VAF application.

Under *Bruen,* the burden is on the Government to confirm that a disqualifier exists before it may step in and prevent the exercise of an individual's Second Amendment rights. Holding Defendants to that requirement is not a "gripe" [Def. Br. at 16] it is a Supreme Court mandate.

In *Ross*, supra, the district court found that NICS "erroneously shifted the burden to [the plaintiff] to contact…the agency that presumably possessed the 'potentially prohibitive criteria' - and required him to submit 'appropriate documentation' and/or update his 'record.'" *Ross,* 903 F. Supp. 2d at 341.

Not only did Defendants improperly shift the burden to Plaintiff to "challenge the accuracy of the record upon which your client's VAF rejection is based," there is nothing to challenge. Queens County did not communicate any prohibiting information to Defendants.

It is *Defendants'* speculation and improper classification of Plaintiff as a "prohibited person" or "potentially prohibited person" that requires correction.

As the *Ross* court noted, "Nothing in the regulations supports the NICS Section's position that the prospective transferee must disprove the existence of a potentially disqualifying criminal record to avoid all future delays." *Ross,* 903 F. Supp. 2d at 341. "The regulations make clear that the burden falls on the NICS Section to conduct additional research 'to determine whether the prospective transferee is disqualified from possessing a firearm by Federal or state law.'" *Ross,* 903 F. Supp. 2d at 341, n. 13 quoting, 28 C.F.R. § 25.6(c)(1).

**B. The Supreme Court's Nod Toward Background Checks Does Not Justify Defendants' Conduct**

The government conflates the *Bruen* Court's nod toward the objective factors of shall-issue licensing schemes, including background checks, with Defendants' conduct in this case.

Plaintiff is not challenging the requirement that he undergo a NICS background check when purchasing a firearm from an FFL.

Plaintiff is challenging Defendants' continued bar to his right to freely acquire new firearms. Even assuming, *arguendo,* that federal background checks are grounded in a national tradition, which Plaintiff does not concede, the Government has failed to identify any historical analogue for the government's erection of a barrier to prevent a non-prohibited person from possessing and/or purchasing firearms. While the Supreme Court in *United States v. Rahimi* upheld a statute that temporarily disarms individuals adjudicated to be "dangerous," the government must in the first instance have proof that the individual was so adjudicated. Defendants have never had any proof that Plaintiff is a prohibited person; their conduct is based on pure – and unfounded - speculation.

Nor has the Government identified any "delay" carve-out in American history. The plain text mandates that the right "shall not be infringed." Full stop.

11

Defendants' failure to justify their conduct requires denial of their motion. And because "district courts are widely acknowledged to possess the power to enter summary judgments *sua sponte*, so long as the losing party was on notice…to come forward with all of [his] evidence,"[5] Plaintiff asks this Court to enter judgment in favor of Plaintiff.

### C. Denial of Plaintiff's VAF Application, and Continued Inclusion of False Negative Information About Plaintiff  in Defendants' Database, Further Violates Plaintiff's Rights

In addition to the past constitutional harms detailed herein, Defendants have foreclosed any possibility of preventing future harms by rejecting his application to be entered into the VAF and be assigned a UPIN.

While the Government admits that the VAF was "established to prevent future erroneous denials or extended delays of a firearm transfer" [Def. Br. at 5], it misleads the Court by claiming that Plaintiff "has multiple avenues which he can pursue to have the information corrected or updated, including contacting the agency that submitted the information to NICS and having  that agency submit supplemental or correcting information to the  appropriate system" and applying to be entered into the VAF [Def. Br. at 17].

Defendants' April 17, 2023 letter confirms the opposite [Ex. 3]. And while the Brady Act may not have been "put toward abusive ends" [Def. Br. at 15] – Defendants' CFRs certainly have, as this case bears out.

---

[5] *Celotex Corp. v. Catrett*, 477 U.S. 317, 326 (1986).

**CONCLUSION**

Defendants' motion should be denied in its entirety, and judgment entered in favor of

Plaintiff.

Dated: August 16, 2024
          Scarsdale, New York

                                        THE BELLANTONI LAW FIRM, PLLC
                                        *Attorneys for Plaintiff*

                          By:     *Amy L. Bellantoni*
                                        Amy L. Bellantoni
                                        DC District Bar No. NY0355
                                        2 Overhill Road, Suite 400
                                        Scarsdale, New York 10583
                                        abell@bellantoni-law.com

13